CHARLES NETTERSTROM *et al.*

*v.*

WALTER S. KEMEYS *et al.*

*Opinion filed October 19, 1900—Rehearing denied December 6, 1900.*

1. TAX CERTIFICATES—*effect of section 211 of Revenue act, concerning purchaser's suffering re-sale of property.* Section 211 of the Revenue act, providing that if the purchaser at a tax sale suffers the property to be again sold for taxes before the expiration of the last day of the second annual sale thereafter he shall not be entitled to a deed until the expiration of a like term from the date of the second sale, operates to extend the life of his certificate during the added period.

2. SAME—*when priority of tax sale certificates as liens is not lost.* The priority of tax sale certificates as liens upon property covered by a trust deed is not lost by their unauthorized delivery to the trustee, without consideration, by the party who was holding them in trust for the purchasers under a written agreement providing that the holder should deliver them to the trustee, or any one named by him, upon the payment of the amount paid therefor, with interest.

*Kemeys* v. *Netterstrom*, 86 Ill. App. 590, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

CHYTRAUS & DENEEN, and CHARLES H. HAMILL, for appellants.

BAYLEY & WEBSTER, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a proceeding in chancery, in the Cook circuit court, to foreclose three trust deeds made by William Kinsella to Edwin F. Bayley, as trustee, (known in this cause as the Bayley trust deeds,) owned by appellees, to satisfy a debt of $7500 secured thereby. Appellants, Netterstrom and Vider, were made parties defendant to the bill, with the allegation that they claimed some interest in the lands conveyed by the instruments in ques-

tion, and after answering they filed a cross-bill, seeking
to foreclose as a junior mortgage a quit-claim deed to
one Lindsten, absolute on its face, conveying the same
lands, and also seeking to have certain tax certificates
which had been purchased by appellants for the taxes of
1893, amounting to $1345.72, declared a lien prior to that
of the Bayley trust deeds. The master to whom the cause
was referred reported adversely to the cross-complain-
ants in respect to their claim of priority over the Bay-
ley trust deeds for the amount paid by them for the
tax certificates, and recommended that the court deny
the prayer of the cross-bill in such respect. The circuit
court, however, sustained exceptions to the master's re-
port and rendered a decree according to the prayer of
the cross-bill. Upon appeal to the Appellate Court for
the First District the decree below was reversed and the
cause was remanded, with directions to the chancellor to
deny the prayer of the cross-bill in so far as it asks a
priority of lien over the Bayley trust deeds and to enter
a decree according to the prayer of the original bill, as
recommended by the master. Appellants now bring the
cause to this court upon further appeal.

Here, as in the Appellate Court, the questions raised
relate wholly to the propriety of the decree in so far as
it gives a priority of lien to the cross-complainants for
the amount expended for the tax certificates. These cer-
tificates were originally held by one Johnson, who, it
appears, at the sales for delinquent taxes, annually, pur-
chased lands in which Bayley was interested, and who
had an agreement with Bayley, (who was not only the
trustee named in the trust deeds but also the agent of
the parties loaning the money,) not to part with the cer-
tificates to any third party without Bayley's consent.
Netterstrom and Vider, the cross-complainants, became
connected with Kinsella's affairs after the making of the
Bayley trust deeds, by reason of their having to pay the
whole of a judgment rendered against them jointly, Kin-

sella being at the time unable to pay his portion of the same. After some negotiation it was arranged that Netterstrom and Vider should lend to Kinsella an amount about equal to his share of that judgment, and take as their security his equity in the real estate covered by the Bayley trust deeds, and other lands. At first it was thought the amount necessary to be advanced by Netterstrom and Vider for this purpose would not exceed $2000, but it was afterwards arranged that these tax certificates should also be taken care of, and thereupon $4000 was agreed upon as the sum to be advanced. To secure this amount the above mentioned quit-claim deed was made by Kinsella to Lindsten, who afterwards executed a declaration of trust setting forth that he held the title for certain trust purposes. Out of the $4000 thus advanced, one Anderson, acting for Netterstrom and Vider, took up the tax certificates, with the consent of Bayley. At the time they were placed in Anderson's hands, a memorandum of contract, in the form of a letter, was drafted by Anderson and signed by him, being dictated by Bayley, setting forth the conditions under which the former was to hold them, as follows:

*"Mr. Edwin F. Bayley:*       "CHICAGO, *April 1, 1895.*

"DEAR SIR—I hold tax certificates for the tax sale of 1893, purchased by a client of mine from William H. Johnson, for the sum of $1345.72, to the following described property, (describing the premises). For valuable considerations moved from you to me, for the benefit of my said client, I hereby agree that if said certificates of sale shall not be canceled of record on or before July 1, 1895, to sell the same to you, or any person upon your order, for the amount above paid to Mr. Johnson, with interest thereon at the rate of six per cent per annum from this date until the time of such sale to you or order. I further agree that this option to you or your order to purchase said tax certificates may remain open for sixty (60) days next after the said first day of July, 1895.       H. H. ANDERSON."

Some time in the summer of 1895, the time not being definitely fixed, Anderson, contrary to the provisions of

this memorandum and without receiving any considera-
tion for them, delivered the certificates to Bayley, where
they continued to remain until this suit was brought.

The contention on the part of appellees is, that the
appellants, as junior mortgagees, simply took up the tax
certificates and held them temporarily, and that they
were afterwards permitted to become void by lapse of
time and were then surrendered by Anderson to Bayley,
thereby being, in effect, canceled; while, on the other
hand, it is urged by appellants that they were not to
be canceled, but to be kept alive and held by Anderson
as a security for the money advanced by appellants, and
that Anderson, by mistake (he, in fact, thinking they
were void,) or without authority, delivered them to Bay-
ley, receiving no compensation or consideration therefor;
that after discovering they were valid, he, Anderson,
made a demand of Bayley for them, but the latter re-
fused to return them; that they are still valid liens upon
the premises and should be decreed a priority over the
Bayley trust deeds.

It clearly appears from the foregoing memorandum
that Anderson was to be the holder of the certificates,
and that upon the payment of certain sums of money he
might sell the same to Bayley, or any person upon his
order. It is not contended that Bayley, or the persons
for whom he was acting as trustee, paid anything for the
certificates when delivered to him by Anderson, yet they
claim that by reason of his holding them their priority
of lien is destroyed, it being conceded that if outstand-
ing they would be prior liens to the Bayley trust deeds.
The controlling question of fact in the cause is whether
or not, when Netterstrom and Vider advanced the money
for the certificates, it was intended they should be can-
celed or be kept alive. We think the evidence clearly
establishes the latter view.

The next consideration is, what was the legal effect
of the surrender of the certificates to Bayley by Ander-

son? It is clear they were valuable liens upon the property. The contention that they were without force as such, because the time had expired when notices should have been served in order to entitle the holder to take out a tax deed, is not well founded. The lands covered by the certificates in question were again sold for taxes for the year 1894. The statute provides that if the purchaser of real estate sold for taxes shall suffer the same to be again sold for taxes before the expiration of the last day of the second annual sale thereafter, such purchaser shall not be entitled to a deed for such real property until the expiration of a like term from the date of the second sale, during which time the lands shall be subject to redemption upon the terms and conditions theretofore described. (Hurd's Stat. 1897, sec. 211, p. 1351.) By this statute there was an extension of the life and vitality of the certificates until the fall of 1897, by reason of the re-sale in 1895. The certificates, then, being of value, and being surrendered by Anderson, the holder, by mistake or without authority and without consideration, upon what principle can it be said appellants shall, by reason of that surrender, suffer loss?

It is said that Bayley himself thought the certificates valueless; that they were so in fact, because it could not be foretold whether the lands would be again sold for taxes, and that in taking them he was perpetrating no fraud or deception upon Anderson. It may be conceded that Bayley acted in the utmost good faith when he received them, yet the fact remains that they were of value, and when he subsequently learned that fact, and having knowledge that Anderson had no authority to surrender them, he refused to return them upon demand. If the certificates had been surrendered to Bayley by the appellants themselves, or by some person with their consent, a different question would be presented; but here the certificates were in the hands of Anderson, who was holding them, it seems, for all parties, in trust for a spe-

cific purpose, and this trust relation was known to Bayley. In surrendering them Anderson acted beyond his authority, and neither Bayley nor his principals can be permitted to profit by an act of the trustee known to be beyond his authority. According to the strict letter of the memorandum above set forth, Bayley was only to get the certificates upon paying for them. Equity demands that he place them back in the hands of the trustee and that they be treated as having remained in his hands, the owners, the appellants, for whose benefit they were to be held, to be given the benefit of all rights which they originally had thereunder.

To the extent of the amount paid for the tax certificates we think the equities of this case are with the cross-complainants, and that the decree of the chancellor was right.

The judgment of the Appellate Court will be reversed and the decree of the circuit court affirmed.

*Judgment reversed.*